OPINION
{¶ 1} Plaintiffs-appellants, Hubert Milton, Sr., et al., appeal the decision of the Clermont County Court of Common Pleas upholding the decision of the Williamsburg Township Board of Zoning Appeals. We affirm the decision of the trial court.
 {¶ 2} In 1976, appellants became the owners of approximately two acres of real property in Williamsburg Township. The property is zoned A-1. In 1976, appellants divided the property into five parcels, known as lots 101, 161, 162, 163, and 164. Hubert Milton, Sr. and Barbara Milton own Lot 101. Lots 161, 162, 163, and 164 are all approximately .57 acres and are owned by Hubert Milton, Sr. and Hubert Milton, Jr. At the time of their creation, all lots conformed to the requirements for development as single-family lots.
 {¶ 3} A residential house was constructed on lot 162 in 1978. However, appellants never applied for building permits or constructed residences on lots 101, 161, 163, and 164. In 1990, appellants had the properties surveyed again. Appellants intended to combine lot 162 with half of lot 101. Appellants then wanted to combine the other half of lot 101 with lot 164. However, appellants failed to file the deeds. Hubert Milton, Jr. testified the failure to file was "an error on my part."
 {¶ 4} In 1994, Williamsburg Township amended its zoning resolution to require a minimum lot size of 1.5 acres for lots to be used for single-family residential purposes. Appellants applied for a building permit in 2000 for lot 164. However, the Williamsburg Township Zoning Inspector would not issue the building permit.
 {¶ 5} As a result of the 1994 zoning resolution, the .57 acre lots, 161, 163, and 164, could no longer be used individually for single-family residential purposes, and the Williamsburg Township Zoning Inspector would not issue zoning certificates for the development of the lots. But, the Williamsburg Township Zoning Inspector stated lots 161, 163, and 164 have the same owners and could be combined to form a single, conforming lot. Furthermore, appellants are permitted to build on lot 101 since it is not in common ownership with any contiguous lots.
 {¶ 6} In December 2000, appellants filed an application for a variance with the Board of Zoning Appeals of Williamsburg Township ("Board"). On January 15, 2001, the Board heard the application and denied the variance. Appellants filed a complaint for declaratory judgment and an administrative appeal with the Clermont County Court of Common Pleas. The trial court entered judgment in favor of Williamsburg Township and dismissed appellants' case. Appellants appeal the decision arguing three assignments of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "The Trial Court erred in finding Section 912 and 914 of the Williamsburg Township Zoning Resolution legal and enforceable."
 {¶ 9} Appellants argue that "a Township's Authority to enact zoning resolutions is limited to that authority granted to the Township by the General Assembly. Zoning regulations which exceed that authority are illegal and unenforceable." Appellants maintain that nothing in Chapter 519 of the Revised Code requires them to combine their nonconforming lots into a single lot.
 {¶ 10} The police power authority of townships to enact zoning ordinances, unlike municipalities, is not inherent, nor does it derive from a constitutional provision. Torok v. Jones
(1983), 5 Ohio St.3d 31, 32. The zoning power of a township is a police power delegated to the township by the General Assembly.Yorkavitz v. Columbia Twp. Bd. of Trustees (1957),166 Ohio St. 349, paragraph one of the syllabus. As such, "[t]he zoning authority possessed by townships in the state of Ohio is limited to that which is specifically conferred by the General Assembly."Bd. of Bainbridge Twp. Trustees v. Funtime, Inc. (1990),55 Ohio St.3d 106, paragraph one of the syllabus. Accordingly, to the extent that a zoning regulation or rule violates an explicit statutory command of the General Assembly, it is preempted and is therefore invalid and unenforceable. Newbury Twp. Bd. ofTrustees v. Lomak Petroleum (1992), 62 Ohio St.3d 387, paragraph one of the syllabus. See, also, Funtime at paragraph two of the syllabus; Crist v. True (1973), 39 Ohio App.2d 11, 12; Cole v.Bd. of Zoning Appeals for Marion Township (1973),39 Ohio App.2d 177, 181.
 {¶ 11} R.C. Chapter 519 grants townships limited zoning authority. R.C. 519.19 specifically outlines the powers of a township board of zoning appeals with regard to the nonconforming use of land, and provides: "[t]he lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enactment of a zoning resolution or amendment thereto, may be continued, although such use does not conform with such resolution or amendment, but if any such nonconforming use is voluntarily discontinued for two years or more, any future use of such land shall be in conformity with sections 519.02 to 519.25, inclusive, of the Revised Code."
 {¶ 12} A dwelling was constructed on lot 162 in 1978. Since the dwelling was existing and lawful when Williamsburg Township amended its zoning resolution to require 1.5 acres for single-family residential lots in 1994, the nonconforming use may be continued. However, lots 161, 163, and 164 have been vacant since appellants purchased them in 1976. There is no existing nonconforming use to continue on lots 161, 163, and 164.
 {¶ 13} A landowner has not been deprived of a pre-existing residential use of a lot where there has been no such use prior to enactment of the prohibition. Northhampton Building Co. v.Bd. of Zoning Appeals of Sharon Township (1996),109 Ohio App.3d 193, 201. Since appellants voluntarily chose not to use the nonconforming lots for two years or more after the enactment of a zoning resolution, pursuant to R.C. 519.19, any future use of such land shall be in conformity with sections R.C. 519.02 to519.25, inclusive. Consequently, the first assignment of error is overruled.
 {¶ 14} Assignment of Error No. 2:
 {¶ 15} "The Trial Court erred in finding that the evidence of the economic viability of the lots in their current state is speculative at best."
 {¶ 16} Appellants argue that the "opinions of a property owner and two expert witnesses that the lots have zero economic value as currently zoned establishes an unconstitutional taking beyond fair debate." The Fifth Amendment to the United States Constitution provides that governmental takings of private property for a public purpose are prohibited unless just compensation is paid. A "taking" may be a physical intrusion onto land, or it may be accomplished through a regulation that prohibits a use of land. Tahoe-Sierra Preservation Council, Inc.v. Tahoe Regional Planning Agency (2002), ___ U.S. ___,122 S.Ct. 1465.
 {¶ 17} In order to constitute a "regulatory" taking, the measure involved must be permanent in nature and of such a character and effect that the owner is deprived of all or substantially all economic use of his land that is feasible. Id. However, "[a] landowner does not have a right to have his land zoned for its most advantageous economic use; the mere fact that the property would be substantially more valuable if used an alternate way is, in itself, insufficient to invalidate an existing zoning ordinance." Smythe v. Butler Township (1993),85 Ohio App.3d 616, 621.
 {¶ 18} The property owner must demonstrate that the zoning restrictions render the property effectively valueless, without any economically beneficial use, such that the landowner should be compensated. Ketchel v. Bainbridge Twp. (1990),52 Ohio St.3d 239, 245. "[S]omething more than loss of market value or loss of comfortable enjoyment of the property is needed to constitute a taking." State ex rel. BSW Dev. Group v. Dayton
(1998), 83 Ohio St.3d 338, 345, quoting State ex rel. Pitz v.Columbus (1988), 56 Ohio App.3d 41.
 {¶ 19} The lots are zoned A-1 which allows buildings or premises for the following purposes: agriculture, churches, public elementary and high schools, public and private forests, cemeteries, golf courses, and hospitals. Hubert Milton, Jr. testified that he researched agriculture use and building a church on the property, and neither was economically feasible.
 {¶ 20} However, appellants concede that they may combine lots 161, 163, and 164 and make a profit by building a house on the combined lot. Additionally, Russell Canter, a real estate appraiser and broker, testified that such a lot would have a fair market value of $18,000. However, Hubert Milton, Jr. testified that while it would be economically feasible to build a house and make a profit on the combined lots, "it just wouldn't be as desirable" as building on the individual lots. Appellants believe building on the individual lots will "maximize" the value of the properties.
 {¶ 21} "Takings" jurisprudence does not favor claims that some more remunerative use is denied. Rather, the question is whether some economically feasible use remains. Feasibility refers to the reasonable availability of the use. Its economic character is its capacity to produce a material return. Both exist here, therefore, no "taking" has occurred for which compensation is required by the Fifth Amendment as a result of the Board's decision. The second assignment of error is overruled.
 {¶ 22} Assignment of Error No. 3:
 {¶ 23} "The Trial Court erred in finding that sections 810, 912 and 914 of the Williamsburg Township Zoning Resolution substantially advances a legitimate governmental interest."
 {¶ 24} Appellant argues that there "is no legitimate governmental purpose advanced by prohibiting the owner of non-conforming lots of record from using those lots in accordance with their non-conforming status."
 {¶ 25} A zoning regulation is presumed to be constitutional unless determined by a court to be clearly arbitrary, unreasonable and without substantial relation to the public health, safety, morals, or general welfare of the community.Goldberg Cos., Inc. v. Council of the City of Richmond Heights,81 Ohio St.3d 207, 214, 1998-Ohio-456. A reviewing court must be reluctant to substitute its judgment for that of the body responsible for applying zoning ordinances. Ketchel v.Bainbridge Twp. (1990), 52 Ohio St.3d 239, 246.
 {¶ 26} Timothy Hershner, an urban planner, testified that permitting a lot size smaller than 1.5 acres would increase population density and require greater costs and expense to the Township to provide public services from police, fire and emergency services, road maintenance, snow removal, water and sewer. Furthermore, Hershner testified that smaller lot sizes would compromise the character and nature of the Township and result in lower land values. Many of these concerns, including increased traffic congestion, maintenance of the single-family nature of a neighborhood and increased population density have been found to be legitimate governmental concerns justifying single-family classification. Leslie v. Toledo (1981),66 Ohio St.2d 488, 491. See, also, Singer v. Troy (1990),67 Ohio App.3d 507, 514.
 {¶ 27} Under these circumstances, the common pleas court could properly conclude that the zoning resolution served a legitimate public interest as a matter of law. The third assignment of error is overruled.
 {¶ 28} Judgment affirmed.
Walsh and Valen, JJ., concur.